**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50559 |
| Plaintiff - Appellee, | D.C. No. 8:12-cr-00194-JLS-1 |
| v. | |
| KENNETH LYLE SPANGLE, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

Argued and Submitted September 1, 2015
Pasadena, California

Before: GRABER, RAWLINSON, and WATFORD, Circuit Judges.

Defendant Kenneth Lyle Spangle appeals the district court's imposition of

262 months' imprisonment following his conviction for bank robbery, in violation

of 18 U.S.C. § 2113(a). For the reasons that follow, we affirm.

1. The district court did not abuse its discretion by denying the motion for a

new trial without holding an evidentiary hearing. United States v. Saya, 247 F.3d

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

929, 934 (9th Cir. 2001). Some factors suggested that an evidentiary hearing may have been warranted: The juror concededly lied to the court on a separate occasion, and the challenged relationship was close (the juror's brother) and relevant to the trial (because the brother worked with the FBI's case agent assigned to this case). But other factors weighed against an evidentiary hearing: The alleged misrepresentation was made in response to an ambiguous question; the same judge was present during voir dire and therefore could assess the credibility of the juror's later explanation that he understood the question differently than Defendant's lawyers intended; and, even had the juror disclosed the relationship, it likely would not have provided a basis for a for-cause dismissal. See id. at 935 (listing factors relevant to the determination whether to conduct a hearing). Although an evidentiary hearing would have been preferable, we cannot conclude that the court's weighing of the factors was an abuse of discretion.

2. The district court correctly held that Defendant's 2004 conviction for mailing threatening communications, in violation of 18 U.S.C. § 876(c), categorically qualifies as a "crime of violence" under U.S.S.G. § 4B1.2(a)(1). Section 876(c) criminalizes the sending of "any threat to kidnap any person or any threat to injure the person of the addressee or of another." By its plain terms, a "threat to injure the person" of another categorically constitutes the "threatened use

of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1); see United States v. De La Fuente, 353 F.3d 766, 770–71 (9th Cir. 2003) (holding that the "threat to injure" prong of § 876(c) categorically constitutes a "threatened use of physical force" for purposes of 18 U.S.C. § 16(a)).

We reach the same conclusion with respect to the sending of a threat to kidnap. There may be circumstances in which a kidnapping itself can be accomplished by means other than force (for example, by deceit). United States v. Sherbondy, 865 F.2d 996, 1009 (9th Cir. 1988). But we conclude that there is no "realistic probability," as distinct from a "theoretical possibility," Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007), that a communication would threaten to kidnap a person by means other than physical force. Defendant has not pointed to any case in which a person was convicted for sending a threat to kidnap someone by deceit. Id.

3. The sentence imposed, at the low end of the Guidelines range, was procedurally sound and substantively reasonable.

**AFFIRMED.**

*United States v. Spangle*, No. 13-50559

WATFORD, Circuit Judge, dissenting:

I think the district court abused its discretion by declining to hold an evidentiary hearing. Until a hearing is held, I don't think we can decide whether the district court properly denied Kenneth Spangle's motion for a new trial.

None of the relevant facts are in dispute. During voir dire, defense counsel asked one of the prospective jurors, "Do you have any contacts in law enforcement?" The prospective juror answered, "No, I don't." He was eventually seated and became a member of the jury that convicted Spangle. After trial, the government learned that the juror had, at least potentially, lied during voir dire. The juror *did* have a "contact" in law enforcement—his own brother. Worse, the juror's brother was an FBI agent who worked in the same FBI office as the case agent prosecuting Spangle's case. The case agent had been seated at counsel's table during trial, and at the outset of voir dire, one of the prosecutors introduced the case agent to the prospective jurors by stating her name and mentioning that she worked for the FBI.

The record is clear that the juror falsely answered a material question during voir dire. Less clear is whether the juror deliberately lied or simply misunderstood what it meant to have a "contact" in law enforcement. If the juror had deliberately lied, that of course would call into question his fitness to serve, something that at

the very least would need to be explored further at an evidentiary hearing. The court found no need for an evidentiary hearing, however, because it concluded that the juror's false answer was "an honest mistake." But the court did not base that conclusion on an assessment of the juror's candor after questioning the juror under oath, as courts typically do in these circumstances. *See, e.g.*, *Price v. Kramer*, 200 F.3d 1237, 1254–55 (9th Cir. 2000). The district court instead relied solely on the transcript of the voir dire and a defense investigator's report summarizing the juror's efforts, during a post-trial interview, to explain his false answer. According to the report, the juror stated that he replied "no" when asked whether he had any contacts in law enforcement because he thought the question asked only if he had any contacts that *would influence his decision as a juror*. That seems like a dubious interpretation of a fairly straightforward question, one that asked, without qualification, whether the juror had *any* contacts in law enforcement.

Without questioning the juror in person, I don't think the district court could permissibly conclude that his false answer during voir dire was an "honest mistake." That determination essentially calls for a credibility determination, which is hard to make on the basis of a cold record even when there's a verbatim transcript of what the witness said under oath in court. That's all the more true when, as here, all we have is an investigator's report summarizing what the witness

said during an out-of-court interview.

I would conclude that the district court abused its discretion by declining to hold an evidentiary hearing even if we knew nothing more about this juror's trustworthiness. But we do know more, and it reflects poorly on the juror's overall credibility. On the second day of trial, the juror arrived late, despite the court's stressing at the outset how important it was that all jurors arrive on time. When the court questioned the juror about why he was late, the juror told the court that his grandmother had suffered a heart attack. Here's the relevant portion of their exchange:

> THE COURT: All right. Mr. [redacted], it's 9:45.
>
> JUROR: Yeah.
>
> THE COURT: And you were late this morning, right?
>
> JUROR: Yes, ma'am.
>
> THE COURT: All right. Now, you didn't have any meetings this morning. You don't have any kids to take care of. Is that all correct?
>
> JUROR: Yeah. That's correct.
>
> THE COURT: Okay. So can you just tell the court why you were late?
>
> JUROR: Because my grandmother had a heart

attack.

THE COURT:     Your grandmother had a heart attack
               this morning?

JUROR:         I had to go with my dad up to Van
               Nuys.

THE COURT:     Now, did you have the phone number
               for the courtroom?

JUROR:         Yeah, but I didn't have it with me.

THE COURT:     Okay.  So that's the reason you weren't
               here, is that your grandmother had a
               heart attack?

JUROR:         Yes, ma'am.

THE COURT:     Did you take her to the hospital?

JUROR:         No, we met with my aunt and uncle up
               there.

THE COURT:     Up where?

JUROR:         Van Nuys.

THE COURT:     So you drove -- do you drive, yourself?

JUROR:         We only -- me and my dad share a car,
               so I had to drop him off up there.

It comes as no surprise that all of this was completely made up.  The juror

admitted to the defense investigator after trial that he had indeed lied to the

court—he was late because he had set his alarm clock for 8:00 p.m. instead of 8:00 a.m. and overslept as a result. Given the juror's demonstrated willingness to lie in court (and shamelessly at that), I think the district court abused its discretion by crediting the juror's "honest mistake" explanation without holding an evidentiary hearing at which the juror could be questioned in person.

I am aware that the standard for granting a new trial on the basis of a juror's false voir dire responses is a demanding one, as it should be. The defendant must show, for our purposes, that the juror gave a false answer to a material question and that "a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).

It's true, as the government asserts, that the juror would not have been subject to dismissal for cause simply because his brother and the case agent worked together in the same FBI office. Yet, we would need to know more about the closeness of the juror's relationship with his brother, and perhaps something about the closeness of the brother's relationship with the case agent, before we could determine whether the juror was subject to dismissal for cause. Those are precisely the sorts of follow-up questions defense counsel would have asked during voir dire had the juror given a truthful response to the question, "Do you have any

contacts in law enforcement?" As the record currently stands, we simply don't know what the juror's responses would have been, so we can't say, with any confidence, whether the juror would or would not have been subject to dismissal for cause. That's why an evidentiary hearing was required before the district court could deny Spangle's new trial motion.

I would vacate the order denying a new trial and remand for the evidentiary hearing that should have been held in the first instance.